## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**JOHN W. FRIDAY**, on behalf of himself
and all others similarly situated,

      Plaintiff,

v.

**ALLURA USA LLC, PLYCEM USA LLC
D/B/A ALLURA, PLYCEM USA, INC.,
ELEMENTIA USA, INC.,
ELEMENTIA S.A.B. De. C.V.,**
.

      Defendants.

_____

**CASE NO.:**   2:18-cv-2701

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

## CLASS ACTION COMPLAINT

   Plaintiff John W. Friday, by and through the undersigned counsel, brings this action on his own behalf and on behalf of a class of persons and entities defined herein against Defendants Allura USA LLC; Plycem USA LLC doing business as Allura; Plycem USA, Inc.; Elementia USA, Inc.; and Elementia, S.A.B. De C.V. (collectively "Defendants"). Upon information and belief, and based on the investigation of counsel to date, Plaintiff alleges the following:

### NATURE OF CASE

   1.   This is a class action asserting unfair and deceptive trade practices in violation of the Kansas Consumer Protection Act (Kan. Stat. Ann § 50-262 *et seq*.), negligence, breach of implied warranty of merchantability, breach of implied warranty of fitness for a particular purpose, fraudulent misrepresentation, fraudulent concealment, and unjust enrichment. For these claims, Plaintiff, on his behalf and on the behalf of others similarly situated, seeks damages and declaratory relief in connection with defective fiber cement siding (the "Siding") designed,

manufactured, marketed, advertised, produced, distributed, sold, and delivered by Defendants.

2.     Defendants manufacture, market, advertise, produce, sell, distribute, and deliver their products throughout the United States, including the State of Kansas.

3.     Defendants have misrepresented and continue to misrepresent the nature, quality, and effectiveness of their Siding through their marketing, advertising, and other representations.

4.     For example, Defendants explicitly guarantee that their Siding will last at least 50-years; however the Siding begins to manifest premature failure within the first 5 years after installation.

5.     Defendants represent that the Siding will be free from manufacturing defects in material and workmanship.

6.     But, the Siding is not free from all manufacturing defects in material and workmanship.

7.     Upon information and belief, the fiber cement Siding is made with excessive amounts of fly ash, causing the Siding to be too brittle for use as an exterior building product (the "Defect").

8.     The Defect, while present from at least the point of sale, is latent and, thus, is not discoverable to consumers until later when manifestations of the Defect appear. Manifestations include, but are not limited to the Siding cracking, chipping, flaking, breaking, splitting, and failing to perform as promised.  The aforementioned damages, if left unrepaired, create paths for leakage into the home, causing additional damage to framing, insulation, and other property in the home.

9.      When Defendants receive complaints about their Siding, Defendants misrepresent the cause of the problems as being due to installation errors, and affirmatively represent that the Siding does not suffer from defects.

10.     Defendants have made and continue to make false, unfair, misleading, deceptive, wrongful, and/or fraudulent representations and omissions in their marketing, advertising, and sale of the Siding.

11.     Defendants omit from their marketing, sales, and advertising material the fact that they utilize excessive fly ash in their fiber cement Siding, and the risks and consequences that can and do result from the use of the amount of fly ash utilized in the Siding.

12.     Examples of false, unfair, misleading, deceptive, wrongful, and/or fraudulent representations include, but are not limited to, the following:

a.      "Allura provides a top quality, fiber cement product using [it's] advanced formulation and quality control monitoring."[1]

b.      "With Allura there's no warping,…[or] weather [ ] damage; just gorgeous siding that's beautifully tough."[2]

c.      The Siding is "[s]ustainable and durable"[3]

d.      The Siding is "specially formulated for high performance, look[s] like natural wood but [is] …moisture…resistant with the strength and durability to handle any kind of weather in any climate."[4]

e.      The Siding is "[v]irtually maintenance-free"[5]

f.      "When it comes to the natural look you want with none of the hassles, Allura Fiber Cement products are all you need. • Durable, engineered to endure harsh weather & high wind climates…Best ROI for homeowners* for 8 years in a

---

[1] https://www.allurausa.com/uploads/resources/128/ALLCO-0355_Overall_Brochure_w_All_Colors_8.5x11_MECH2_fixed_nocrops.pdf (last accessed 12.18.18).
[2] https://www.allurausa.com/fiber-cement-siding-products/lap-siding (Last accessed 12.18.18).
[3] *Id.*
[4] https://www.allurausa.com/about (last accessed 12.17.18).
[5] https://www.allurausa.com/fiber-cement-siding-products/lap-siding (last accessed 12.18.18).

–3–

row."[6]

13.     Despite what Defendants' representations would have consumers believe, Defendants' Siding does not and cannot satisfy these promises upon which consumers rely.

14.     Instead, the Siding – advertised as an exterior product – is vulnerable when exposed to regular weather cycles, including hot and cold temperatures, such that the Siding contracts and expands, cracks, chips, flakes, breaks, splits, creates leakage paths, and prematurely fails as a result of the brittleness caused by the Defect.

15.     Defendants have long known or should have known of the Siding's defective nature.

16.     Yet, Defendants charge a premium for the Siding using false, misleading, unfair, deceptive marketing in an effort to dupe homeowners, contractors, and builders into purchasing the Siding for prices that exceed their true value. Defendants have pursued and continue to pursue this course of conduct in order to profit off of unassuming, trusting consumers seeking a quality siding product.

17.     Plaintiff and Class Members are consumers who were misled or deceived by Defendants' omissions and false, deceptive, misleading, unfair representations and as a result purchased the Siding.

18.     Plaintiff, Class Members, contractors, and builders would not have purchased the Siding had Defendants disclosed accurate information about the product and not misrepresented the Siding.

19.     As a result of the Defect and Defendants' conduct, Plaintiff and members of the

---

[6] https://www.allurausa.com/uploads/resources/128/ALLCO-0355_Overall_Brochure_w_All_Colors_8.5x11_MECH2_fixed_nocrops.pdf (last accessed 12.18.18).

–4–

Class have been injured and suffered damages by, *inter alia*, being subjected to the unfair and deceptive marketing, purchasing the Siding that they would not otherwise have purchased had they known of the Defect, being forced to pay for repairs and installation of new replacement Siding, despite the product being marketed as a 50-year product, and damage to their property – other than the Siding.

20.    Plaintiff, thus, brings this class action against Defendants on behalf of himself and on behalf of all individuals similarly situated seeking damages and appropriate equitable relief given that Defendants' conduct violates well-established contract, tort, and consumer protections laws.

## JURISDICTION AND VENUE

21.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1332(d)(2) and the Class Action Fairness Act, in that (i) there is complete diversity, (ii) the amount in controversy exceeds $5,000,000.00exclusive of interests and costs, and (iii) there are 100 or more members of the proposed Plaintiff Class.

22.    Venue is proper in this District, pursuant to 28 U.S.C. §1391, because Plaintiff resides in this Judicial District, and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this Judicial District.

23.    In addition, Defendants do business and/or transact business in this Judicial District, and therefore, are subject to personal jurisdiction in this Judicial District and reside here for venue purposes.

## THE PARTIES

24.    Plaintiff John Friday is a citizen and resident of Leavenworth County, and resides at 525 Pleasant Street, Tonganoxie, Kansas.

25.     Defendant Allura USA LLC ("Allura USA") is a subsidiary of Plycem USA LLC d/b/a Allura ("Allura") and Plycem USA, Inc. ("Plycem USA"), with a principal place of business in the State of Texas, and Allura USA transacts and conducts business in Kansas and has done so at all times relevant to this Complaint.

26.     Defendant Allura is a corporation organized and existing under the laws of the State of Delaware with a principal place of business in the State of Texas. Allura transacts and conducts business in Kansas and has done so at all times relevant to this Complaint.

27.     Defendant Plycem USA Inc. is a corporation organized and existing under the laws of the State of Georgia, with a principal place of business in the State of Texas. Plycem USA Inc. transacts and conducts business in Kansas and has done so at all times relevant to this Complaint.

28.     Defendant Elementia USA, Inc. ("Elementia USA"), is a corporation organized and existing under the laws of the State of Delaware with a principal place of business in the State of Texas. Elementia USA transacts and conducts business in Kansas and has done so at all times relevant to this Complaint.

29.     Defendant Elementia S.A.B. De CV ("Elementia Mexico"), is a corporation organized and existing under the laws of Mexico. Elementia Mexico transacts and conducts business in Kansas and has done so at all times relevant to this Complaint.

30.     At all times relevant herein, Elementia Mexico, Elementia USA, Plycem USA Inc., Allura, and Allura USA jointly transacted and conducted business in Kansas and continues to do so today.

31.     Defendants are the agents and/or alter egos of each other and the corporate interests of Defendants amalgamated so that they, in effect, operate(d) as one and the same

entity.

32.     Defendants use(d), commingle(d), and combine(d) their resources to design, develop, manufacture, market, and sell the fiber cement Siding at issue.

33.     At all times relevant herein, Defendants engaged in actual and/or *de facto* joint ventures in relation to the design, development, manufacture, marketing, and sale of the fiber cement Siding at issue.

## COMMON FACTUAL ALLEGATIONS

### Fiber Cement Siding Generally

34.     Fiber cement siding is a composite building material made of cement reinforced by other fibers.

35.     Fiber cement siding is meant to be a cost-effective, low-maintenance, alternative to the use of traditional materials, including vinyl and wood.

36.     Fiber cement siding is meant to be superior to traditional materials because it is intended to be durable, and should not rot, buckle or warp; and holds paint for several years longer.

37.     In general, fiber cement used to create siding, trim, soffits, and other fiber cement products often consists of wood pulp, water, cement, and materials that act as a filler to the mixture.

38.     The exact amounts of each of these ingredients varies among manufacturers.

39.     Not only do the amounts vary, but the actual materials may vary among manufacturers with regard to the fillers.

40.     Upon information and belief, it is common for manufacturers to use grain and/or silica as fillers in their fiber cement.

–7–

41.     Some manufacturers began using fly ash, a by-product of the coal industry, in their fiber cement mixtures.  When used in the appropriate amount, fly-ash can strengthen the formula of the fiber cement and create a suitable exterior building material.

42.     Upon information and belief, Defendants use excessive amounts of fly ash such that their Siding is defective and not able to provide all the benefits typically garnered from use of fiber cement siding.

**Defendants' Defective Fiber Cement Siding & Knowledge of the Defect**

43.     "For over 75 years Allura has been manufacturing and distributing fiber cement exterior building products that include lap siding, panels, soffits, shakes, and exterior trim."[7]

44.     Upon information and belief, Defendants have sold, directly or indirectly (through dealers and other retail outlets), thousands of units of Siding nationwide and in the State of Kansas.

45.     At all times relevant herein, Defendants were engaged in the design, manufacture, marketing, sale, supply, delivery, and/or distribution of the fiber cement Siding in the State of Kansas and across the nation.

46.     In conjunction with each Siding sale, Defendants represent, market, and advertise that the Siding is (a) fit for the ordinary purpose for which such goods were used, and (b) free from defects in materials and workmanship.

47.     In reality, the Siding is neither fit for its ordinary purpose as an exterior building material, nor is it free from defects in materials and workmanship.

48.     Defendants hold themselves out to both the construction industry and the public at large as providers of superior, quality, and durable products, including the fiber cement Siding

---

[7] https://www.allurausa.com/about (last accessed 12.18.18).

that is the subject of this litigation.

49.     But Defendants' Siding is not of the nature, kind, or quality that Defendants represent.

50.     Upon information and belief, Defendants use excessive fly ash when manufacturing their fiber cement Siding which constitutes the Defect in the product.

51.     Fly ash is an industrial by-product of coal burning power plants that costs less than cement.

52.     So Defendants' use of fly ash lowers the cost of manufacturing the Siding, given that Defendants are able to use less expensive materials in the Siding.

53.     The Defect is, thus, the result of Defendants' conduct, including fundamental design, engineering, and manufacturing errors well within Defendants' area of expertise.

54.     The Defect exists at the time the Siding leaves the factory and is present at the time of sale to consumers.

55.     The Defect is a latent one, so failure may manifest immediately upon installation or may manifest later in the life of the product, *e.g.*, after repeated expansion and contraction due to exposure to regular weather patterns.

56.     Given that the Defect is latent, no reasonable consumer could know or discover the Defect at the time of sale.

57.     On the other hand, Defendants knew or should have known that the addition of excessive fly ash in the fiber cement Siding would result in the damages complained of by many consumers to Defendants, such as cracking, chipping, flaking, breaking, splitting, leaking, failing to perform as promised, and prematurely failing shortly after installation.

58.     Upon information and belief, Defendants knew that the addition of excessive fly

–9–

ash in the fiber cement Siding would cause premature failure, in that the product would be too brittle for use as an exterior building product.

59.     Defendants knew or reasonably should have known the Siding is defective as designed and manufactured such that the product fails prematurely, eventually permitting moisture intrusion into the homes, thereby causing additional damage.

60.     Defendants knew or should have known that the Siding was defective in design and/or manufacturing, not fit for its ordinary and intended use, and failed to perform in accordance with the advertisements, marketing materials, and other representations disseminated by Defendants.

61.     Moreover, the Siding failed to perform to the reasonable expectations of ordinary consumers.

62.     Defendants knew or should have known that the Defect was present at the time the products left their control, not only because of their expertise regarding the Siding and testing of the Siding, but also because of the complaints and notices of the Defect that they received from homeowners, installers, and builders about the damages described herein along with the short service life of the Siding.

63.     Defendants knew or should have known about the widespread nature of the Defect in Kansas.

64.     Despite knowing of the Defect, Defendants have not notified all purchasers of homes containing the Defendants' Siding of the Defect or provided uniform relief.

**Complaints of Defective Siding**

65.     Upon information and belief, Defendants have received thousands of complaints alleging a manufacturing or design defect in the Siding.

−10−

66.     When responding to claims, Defendants uniformly represent to Plaintiff and the Class that the Siding is not defective, but that the problems were caused by improper installation or some other mishandling. Such statements constitute affirmative misrepresentations of material fact in light of the known Defect inherent in the Siding purchased by Plaintiff and the Class.

67.     Such representations serve to conceal the true nature of Defendants' defective Siding.

### Defendants' False, Misleading, Deceptive, Unfair Marketing, Advertising, & Sale of Defendants' Fiber Cement Siding

68.     Despite Defendants' knowledge of the Defect and the damage it could cause, Defendants concealed, omitted, and misrepresented the Siding to consumers.

69.     At all relevant times, Defendants had a duty to disclose to Plaintiff and Class Members that the Siding was defective, prone to foreseeable and uniform problems, such as the problems described herein, and otherwise inherently flawed in design and/or manufacturing such that the Siding was not suitable for use as an exterior building material.

70.     Instead, Defendants concealed and continue to conceal the Defect and omit from their marketing, sales, and advertising material the Defect itself, the fact that they utilize excessive fly ash in their Siding, and the risks and consequences that can and do result from the use of the amount of fly ash utilized in the Siding.

71.     Defendants fail to warn Siding purchasers, installers, and users of the risks of failure and damages described herein resulting from the Defect.

72.     In discussions with homeowners, installers, and builders after sale of the Siding, Defendants have concealed and continue to conceal their knowledge of the Defect, and instead represent that the damage is a result of mishandling of the Siding or installation errors.

73.     Defendants falsely, wrongly, unfairly, and/or fraudulently represent, mislead, and deceive consumers about the Siding with statements that include, but are not limited to, the following:

   a.     "SIDE WITH THE BEST."[8]

   b.     Allura provides "QUALITY PRODUCTS & PROTECTED INVESTMENT"[9]

   c.     "Allura provides a top quality, fiber cement product using [it's] advanced formulation and quality control monitoring."[10]

   d.     "With Allura there's no warping, fading, weather or insect damage; just gorgeous siding that's beautifully tough."[11]

   e.     The Siding is "[s]ustainable and durable"[12]

   f.     The Siding is "specially formulated for high performance, look[s] like natural wood but [is] fire, bug, moisture, impact and fade resistant with the strength and durability to handle any kind of weather in any climate."[13]

   g.     The Siding is "suitable in both hot and cold climates"[14]

   h.     It is a "[l]ow maintenance alternative to wood"[15]

   i.     "Combining the appearance and workability of wood with the durability of specially formulated fiber cement, Allura Lap Siding not only looks great but lasts considerably longer than traditional exterior wall cladding or vinyl

---

[8] https://www.allurausa.com/uploads/resources/128/ALLCO-0355_Overall_Brochure_w_All_Colors_8.5x11_MECH2_fixed_nocrops.pdf (last accessed 12.18.18).
[9] *Id.*
[10] *Id.*
[11] https://www.allurausa.com/fiber-cement-siding-products/lap-siding (Last accessed 12.18.18).
[12] *Id.*
[13] https://www.allurausa.com/about (last accessed 12.17.18).
[14] https://www.allurausa.com/uploads/resources/128/ALLCO-0355_Overall_Brochure_w_All_Colors_8.5x11_MECH2_fixed_nocrops.pdf (last accessed 12.18.18).
[15] https://www.allurausa.com/fiber-cement-siding-products/lap-siding (last accessed 12.18.18).

siding."[16]

    j.    The Siding is "[v]irtually maintenance-free"[17]

    k.    "When it comes to the natural look you want with none of the hassles, Allura Fiber Cement products are all you need. • Durable, engineered to endure harsh weather & high wind climates…Best ROI for homeowners* for 8 years in a row."[18]

74.    In actuality, the defective Siding is not top quality; it is vulnerable to weather damage; it is unstable when experiencing normal freeze/thaw cycles and hot and cold climates; it can warp; it is not tough, durable, or sustainable; it does not deliver a high performance for fiber cement siding; it is not maintenance-free; it is unlikely the Siding will outlast traditional exterior wall cladding or vinyl siding, given premature failure within the first 5-years of installation; it is not hassle-free; the Siding is not all an individual will need; and it will not serve to be a buyer's best return on investment.

75.    The Defect reduces the effectiveness and performance of the Siding and renders the Siding unsuitable for the purposes for which it is marketed, and advertised.

76.    The defective Siding suffers premature failure, causing homeowners to repair or replace their Siding just a few years into the service life of the product.

77.    Defendants represent that the Siding should last at least 50-Years; however, the Siding is so brittle that it begins to fail within the first five (5) years of its service life, and all Siding manufactured, produced, and sold by Defendants will fail prior to the represented and anticipated useful service life.

---

[16] https://www.allurausa.com/uploads/resources/128/ALLCO-0355_Overall_Brochure_w_All_Colors_8.5x11_MECH2_fixed_nocrops.pdf (last accessed 12.18.18).

[17] https://www.allurausa.com/fiber-cement-siding-products/lap-siding (last accessed 12.18.18).

[18] https://www.allurausa.com/uploads/resources/128/ALLCO-0355_Overall_Brochure_w_All_Colors_8.5x11_MECH2_fixed_nocrops.pdf (last accessed 12.18.18).

78.     As a result of the Defect, the Siding cracks, chips, flakes, breaks, warps, splits; suffers discoloration, product shrinkage, and eventually creates leakage paths which may infiltrate the home and impact the sheathing, framing components, and eventually even the interior of the home; and causes consequential damages to other property, including adjoining finishes and walls.

79.     So while advertised as low-maintenance, the Siding actually requires early, unexpected maintenance and premature repair and replacement of parts of the Siding or the entire installation of the Siding. And when the repair and replacement is made with the same defective Siding, the Siding will require continued maintenance, care, repair, and replacement by consumers.

80.     The premature failure of the Siding leaves the underlying structures and other surrounding property vulnerable to additional damage.

81.     The failure and shortcomings of the defective Siding also creates a safety hazard and diminishes the value of the property given, *inter aila*, that the failing Siding violates building codes and industry standards.

82.     The Siding does not perform in accordance with the reasonable expectations of consumers and is not a suitable building product to be installed on houses or buildings.

83.     Ultimately, consumers, like Plaintiff and Class Members, relied on Defendants' false, misleading, unfair, deceptive, and/or fraudulent representations in deciding to purchase the defective Siding and were harmed due to the same.

84.     All of Defendants' Siding is uniformly defective such that a large number of Kansas homeowners, including Plaintiff, who have the Siding on their homes, buildings, or other structures have been harmed and suffered consequential damages. Indeed, Plaintiff's and Class

Members' Siding has, is, or will manifest the Defect in one or more of the ways described herein (*e.g.*, failing before the time period advertised, marketed, and guaranteed by Defendants; failing before the time expected by ordinary consumers; cracking, splitting, warping, breaking; and eventual water intrusion).

85.     The manifestations of the Defect are so severe that Plaintiff and Class Members must repair or replace their Siding sooner than one would reasonably expect and Plaintiff and Class Members will be forced to expend thousands of dollars to repair and replace the Siding, repair any damage associated with the manifestations of the Defect, and prevent any additional damage to their homes.

86.     Though numerous homeowners, installers, and builders have informed Defendants of the Siding damage that, upon information and belief, was caused by the Defect; because the Defect is latent and not detectable at the time of purchase until manifestation, Plaintiff and Class Members were not reasonably able to discover their Siding was and is defective, despite the exercise of due diligence.

87.     Plaintiff and Class Members have not received the benefit of the bargain.

88.     Thus, Plaintiff seeks to recover, for himself and for the Class, at least, the costs of repairing the damage to their property and replacing their Siding.

89.     The water intrusion and above-described damages resulting from the Siding Defect constitutes "occurrences" resulting in "property damage" to property other than Defendants' "product" as those are terms commonly defined and used in the typical commercial general liability insurance policy.

## PLAINTIFF'S EXPERIENCE

### *Plaintiff John Friday*

90.     Plaintiff Friday resides in Tonganoxie, Kansas, where the defective Siding was installed on his home.

91.     In 2015, Plaintiff and his wife contracted for the construction of the Tonganoxie home.

92.     In the fall of 2015, Plaintiff began shopping for a fiber cement siding product for purchase and installation on the home.

93.     In September of 2015, Plaintiff selected and directly purchased Defendants' prefinished fiber cement Siding from a nearby Menards store for installation on his new home.

94.     Plaintiff selected the Siding after reviewing materials and information supplied by Menards, and expected the Siding to perform as represented by Defendants.

95.     In August of 2018, Plaintiff noticed that some of his Siding was suffering from cracking.

96.     Upon noticing the cracking, Plaintiff performed research and discovered that other homeowners were complaining of the same problems and that the Siding suffers from a Defect which causes the damage being suffered by his own Siding.

97.     Upon information and belief, Defendants knew of and had notice of the Defect and the resultant damages in the Siding from homeowners, distributors, installers, and builders in Kansas and other states across the country.

98.     At a minimum, this Complaint serves as Plaintiff's notice to Defendants of the Defect and the damages he has incurred as a result of the Defect and Defendants' actions.

## CLASS ACTION ALLEGATIONS

99.     Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and the following Class defined as follows:

> *For the longest period of time allowed by law, all persons and entities that own structures within the State of Kansas on which Defendants' fiber cement Siding is or was installed.*

Excluded from the Class are: (a) any judges presiding over this action and members of their immediate families; (b) any members of the judges' staff, (c) Defendants, including any officer, director, or employee of Defendants; (d) any parent company, subsidiary, successor, or assign of Defendants; (e)any entity in which Defendants have a controlling interest or which has a controlling interest in Defendants; Defendants' legal representatives; (f) anyone employed by counsel in this action; and (g) all persons who properly execute and file a timely request for exclusion from the Classes.

100.    *Numerosity*: The Class is composed of hundreds or thousands of persons geographically dispersed throughout the state of Kansas, the joinder of whom in one action is impractical. Moreover, upon information and belief, the Class are ascertainable and identifiable from Defendants' records or identifying marks on the Siding.

101.    *Commonality*: Questions of law and fact common to the Class exist as to all members of the Class and predominate over any questions affecting only individual members of the Class. These common legal and factual issues include, but are not limited to the following:

        a.      Whether the Siding is defective;

        b.      Whether the Siding prematurely fails;

        c.      Whether Defendants were negligent in the design and manufacture of the Siding;

        d.      Whether the Siding has not performed or will not perform in accordance with

–17–

the reasonable expectations of ordinary consumers;

e.      Whether Defendants knew or should have known of the Defect;

f.      Whether Defendants concealed from consumers and/or failed to disclose the Defect to consumers;

g.      Whether Defendants breached the implied warranty of merchantability by failing to disclose the defect in the Siding and by continuing to sell the defective Siding even after it knew or should have known of the Defect;

h.      Whether Plaintiff and Class Members are entitled to compensatory damages, including, among other things: (i) compensation for all out-of-pocket monies expended for replacement of Siding and/or installation costs; (ii) the failure of consideration in connection with and/or difference in value arising out of the variance between the Siding as represented and the Siding containing the Defect; and (iii) the diminution of resale value of the structures containing the Siding resulting from the Defect.

i.      Whether Plaintiff and the Class Members are entitled to replacement of their defective Siding with non-defective Siding; and

j.      Whether Plaintiff and Class Members are entitled to replacement and repair costs associated with damage caused to their property, other than the Siding;

k.      Whether Defendants falsely advertised and marketed the Siding to consumers, including builders, installers, distributors, and home owners.

102.    *Typicality*:  Plaintiff's claims are typical of the claims of members of the Class as all such claims arise out of Defendants' conduct in designing, manufacturing, marketing, advertising,  and selling the defective Siding; Defendants' conduct in concealing the Defect; and/or Plaintiff's and Class Members' purchase of home(s) with the defective Siding.

103.    *Adequate Representation*: Plaintiff will fairly and adequately protect the interests of the members of the Class and has no interests antagonistic to those of the Class. Plaintiff has retained counsel experienced in the prosecution of complex class actions, including consumer class actions involving product liability and product design defects.

104.    *Predominance and Superiority*:  This class action is appropriate for certification because questions of law and fact common to the members of the Class predominate over questions affecting only individual members, and a class action is superior to other available

–18–

methods for the fair and efficient adjudication of this controversy, since individual joinder of all members of the Class is impracticable.

105.     Should individual Class Members be required to bring separate actions, this Court and courts throughout Kansas would be confronted with a multiplicity of lawsuits burdening the court system while also creating the risk of inconsistent rulings and contradictory judgments.

106.     In contrast to proceeding on a case-by-case basis, in which inconsistent results will magnify the delay and expense to all parties and the court system, this class action presents far fewer management difficulties while providing unitary adjudication, economies of scale and comprehensive supervision by a single court.

107.     Moreover, because of the relatively small size of the typical individual Class Member's claims and because most homeowners and/or property owners have only modest resources, it is unlikely that individual Class Members could afford to seek a full and fair recovery against Defendants regarding the Defect on their own.

108.     This is especially true in light of the size and resources of Defendants in this matter, and a class action is, therefore, the only reasonable means by which Class Members can obtain relief from these Defendants.

## ESTOPPEL FROM PLEADING AND TOLLING OF APPLICABLE STATUTES OF LIMITATIONS

109.     All conditions precedent for filing this Complaint have been satisfied and this Complaint has been filed prior to the expiration of any applicable statutes of limitations or statutes of repose. To the extent this is challenged, Defendants are prevented from enforcing certain filing or notice requirements and time limits.

110.     Defendants are estopped from relying on any statutes of limitation or repose by

–19–

virtue of their acts of fraudulent concealment.

111.    Upon information and belief, Defendants have known of the Defect in the Siding for years and has concealed it from owners, installers, and builders of the Siding and/or failed to alert the owners of the defective nature of the Siding.

112.    Given Defendants' failure to disclose this known but non-public information about the defective nature of the Siding – information over which it had exclusive control – and because Plaintiff and Class Members therefore could not reasonably have known that the Siding was defective, Defendants are estopped from relying on any statutes of limitations or repose that might otherwise be applicable to the claims asserted herein.

### COUNT I
### UNFAIR AND DECEPTIVE TRADE PRACTICES IN VIOLATION OF
### KANSAS CONSUMER PROTECTION ACT
### (KAN. STAT. ANN § 50-626, *et seq.*)

113.    Plaintiff individually and on behalf of all others similarly situated, adopts and incorporates by reference all allegations contained in all prior paragraphs as though fully set forth herein.

114.    This action is brought to secure redress for the unlawful, deceptive and unfair trade practices perpetrated by Defendants on behalf of Plaintiff and Class Members.

115.    Defendants' actions and/or omissions as described herein violate Kan. Stat. Ann § 50-626, *et seq.* (the "KCPA"), which was enacted to protect consumers against unfair, deceptive, or fraudulent business practices, unfair competition and false advertising in the conduct of any business, trade, or commerce.

116.    The KCPA, Kan. Stat. Ann. § 50-626(a), (b) (1) (A), (D), and (F), (2) and (3)(2018), provides, in pertinent part, as follows:

(a) No supplier shall engage in any deceptive act or practice in connection with a consumer transaction.

(b) Deceptive acts and practices include, but are not limited to, the following, each of which is hereby declared to be a violation of this act, whether or not any consumer has in fact been misled:

    (1) Representations made knowingly or with reason to know that:

        (A)   Property or services have sponsorship, approval, accessories, characteristics, ingredients, uses, benefits or quantities that they do not have;
        . . .

        (D)   property or services are of a particular standard, quality, grade, style, or model, if they are of another which differs materially from the representation;
        . . .
        (F)   property or services has uses, benefits or characteristics unless the supplier relied upon and possesses a reasonable basis for making such representation; or
        . . .

    (2) the willful use, in any oral or written representation, of exaggeration, falsehood, innuendo or ambiguity as to a material fact;

    (3) the willful failure to state a material fact, or the willful concealment, suppression or omission of a material fact.

117. Defendants knowingly misrepresented and intentionally omitted material information regarding the Siding by failing to disclose that it was being made with cheaper products that would result in the Defect.

118. Defendants' misrepresentations and concealment of material facts constitute unconscionable commercial practices, deception, fraud, false pretenses, misrepresentation, and/or the knowing concealment, suppression, or omission of materials facts with the intent that others rely on such concealment, suppression, or omission in connection with the sale and use of Defendants' Siding in violation of the KCPA.

119.    Defendants violated the KCPA by, *inter alia*, knowingly and falsely representing that Defendants' Siding was fit to be used for the purpose for which it was intended, when Defendants knew it was defective, unreliable, and would fail prematurely.

120.    Defendants violated the KCPA by representing to those who contacted them regarding the damage that the damage was related to mishandling and installation errors when in fact it was due to the Defect.

121.    Defendants violated the KCPA by representing that the product would last 50 years when in fact the product fails prematurely and Defendants misrepresent to Plaintiff and Class Members that the failure is caused by installation errors and not a defect in the Siding.

122.    Defendants violated the KCPA by willfully concealing and suppressing the material fact that the Siding was defective and would prematurely fail.

123.    Kansas has enacted statutes, such as the KCPA, to protect consumers from deceptive, fraudulent, and unconscionable trade and business practices such as those alleged in this Complaint.

124.    As a direct and proximate result of Defendants' violations of the KCPA, Plaintiff and Class Members have suffered and continue to suffer damages. Plaintiff and Class Members are entitled to compensatory damages, equitable and declaratory relief, punitive damages, costs, and reasonable attorneys' fees.

## COUNT II
## NEGLIGENCE

125.    Plaintiff individually and on behalf of all others similarly situated, adopts and incorporates by reference all allegations contained in the prior paragraphs as though fully set forth herein.

126.    Defendants have a duty to exercise reasonable care in the manufacturing, processing, distributing, delivering, supplying, inspecting, marketing and/or selling the Siding that Defendants place into the stream of commerce, including a duty to assure that the product will perform as intended and will not cause damage as described herein.

127.    Defendants breached their duty by failing to exercise ordinary care in the manufacturing, processing, distributing, delivering, supplying, inspecting, marketing and/or selling the Siding that Defendants placed into the stream of commerce in that Defendants knew or should have known that the product was defective, did not function as intended, and/or created a high risk of unreasonable, dangerous, foreseeable consequences.

128.    The negligence of Defendants, their agents, servants, and/or employees, includes, but is not limited to, the following acts and/or omissions:

        a.    designing, manufacturing, processing, distributing, delivering, supplying, inspecting, marketing and/or selling Siding without thoroughly testing it;

        b.    selling Siding without performing proper and sufficient tests to determine the dangers of premature failure to home owners, builders, installers, and other consumers;

        c.    negligently failing to adequately and correctly warn Plaintiff, Class Members, and the public, of the risks, potential damage, and dangers of premature failure of Defendants' Siding;

        d.    negligently failing to recall or otherwise notify users at the earliest date that it became known that the Siding was, in fact, defective and would prematurely fail;

        e    negligently advertising and recommending the use of the Siding without sufficient knowledge as to its manufacturing defect and premature failure;

        f.    negligently representing that Defendants' Siding was suitable for its intended purpose when, in fact, it is too brittle to serve as an exterior building product;

        g.    negligently designing and processing the Siding in a manner that would prematurely fail; and

        h.    in other such ways that may be proven at trial.

129.    Defendants were negligent in the design, manufacturing, processing, distributing, delivering, supplying, inspecting, marketing and/or selling of Defendants' Siding in that they:

a.    failed to use due care in designing and manufacturing the Siding so as to avoid the premature failure when the Siding was used for its intended purpose;

b.    failing to conduct adequate testing to determine the useful life of the Siding; and

c.    failing to warn Plaintiff, prior to actively encouraging the purchase of the Siding either directly or indirectly, orally or in writing, about the defective nature of the product; and

d.    in other such ways that may be proven at trial.

130.    Upon information and belief, despite the fact that Defendants knew or should have known that the Siding was defective and would prematurely fail, Defendants continued to design, manufacture, process, distribute, deliver, supply, market, and/or sell Siding to Plaintiff, Class Members, and/or the consuming public.

131.    Defendants knew or should have known that consumers such as Plaintiff and Class Members would foreseeably suffer damage to the Siding and Plaintiff and Class Members' homes as a result of Defendants' acts and omissions, as well as failure to exercise ordinary care, as well as Defendants' negligent design and formulation of the Siding, as set forth herein.

132.    Defendants' negligence was the proximate cause of Plaintiff's and Class Members' damages, injuries, harm, and economic loss which they suffered and will continue to suffer.

133.    By reason of the foregoing, Plaintiff and Class Members experienced and/or are at risk of premature failure of the Siding.

134.    As a direct and proximate result of Defendant's misconduct, Plaintiff and Class

Members have been damaged in an amount to be proven at trial.

135.    In addition to compensatory damages, Plaintiff and Class Members are entitled to punitive damages, because Defendants' conduct was gross, oppressive, aggravated, or involved a breach of trust or confidence.

## COUNT III
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

136.    Plaintiff individually and on behalf of all others similarly situated, adopts and incorporates by reference all allegations contained in prior paragraphs, as though fully set forth herein.

137.    Defendants entered into contracts with retailers, suppliers and/or contractors to sell the Siding to be installed at Plaintiff's and the Class Members' properties.

138.    Plaintiff and Class Members are intended third-party beneficiaries of those contracts as it was the clear and manifest intent of Defendants that the contracts were to primarily and directly benefit buyers, like Plaintiff and Class Members, when the Siding passed to homeowners through the direct sale of the Siding, as well as through the sale of homes containing the Siding.

139.    Defendants warranted that their Siding was merchantable and reasonably fit for their ordinary purpose as an exterior building product, was free of defects, and would not cause damage as set forth herein.

140.    Defendants breached the implied warranty of merchantability by selling Siding that was and is defective, and not reasonably fit for its ordinary purpose as an exterior building product and fails long prior to its 50-year expected service life.

141.    Defendants' defective Siding causes and continues to cause damage as described more fully herein.

142.    As a result of Defendants' breach of the implied warranty of merchantability, Plaintiff and Class Members have suffered and continue to suffer damages.

## COUNT IV
## FRAUDULENT MISREPRESENTATION

143.    Plaintiff individually and on behalf of all others similarly situated, adopts and incorporates by reference all allegations contained in prior paragraphs as though fully set forth herein.

144.    Defendants falsely and fraudulently represented to Plaintiff, Class members, and/or the consuming public in general that Defendants' Siding would be free from defects, fit for its customary and normal use as an exterior building product, and not fail prior to the 50-year useful life touted by Defendants.

145.    Further, when Defendants were contacted regarding the damages experienced resulting from the Defect in the Siding, Defendants represented that the damage was not related to a defect in the product but was the result of mishandling or installation errors.

146.    That representation made by Defendants is false.

147.    Defendants, upon information and belief, knew those representations to be false and/or they willfully, wantonly, and recklessly disregarded whether the representations were true.

148.    Defendants made these representations with the intent of defrauding and deceiving Plaintiff, Class Members and/or the consuming public. The representations evinced reckless and willful indifference to the safety and welfare of Plaintiff and Class Members.

149.    At the time the aforesaid representations were made by Defendants, Plaintiff and Class Members were unaware of the falsity of said representations and reasonably believed the statements to be true.

150.    In reliance upon said representations, Plaintiff's and Class Members' properties were built using Defendants' Siding and sustained damage and injury and/or increased risk of sustaining damage and injury in the future.

151.    Defendants knew and were aware, or should have been aware, that the Siding was defective and not fit for its customary and normal use, would prematurely fail, and the resulting damages were not caused by mishandling or installation errors.

152.    Defendants knew, or should have known, that the Siding had a potential to and likely would cause severe damage and injury to property owners and their homes.

153.    Defendants brought the Siding to the market and acted fraudulently, wantonly, and maliciously to the detriment of the Plaintiff and Class Members.

154.    By reason of the foregoing, Plaintiff and Class Members suffered, and continue to suffer, damage and injury.

## COUNT V
## FRAUDULENT CONCEALMENT

155.    Plaintiff individually and on behalf of all others similarly situated, adopts and incorporates by reference all allegations contained in prior paragraphs as though fully set forth herein.

156.    Defendants knew or should have known that the Siding was defective in design and formulation, was not fit for its ordinary and intended use, and failed to perform in accordance with advertisements, marketing materials and other representations disseminated by

Defendants, and with the reasonable expectations of ordinary consumers.

157.    Defendants fraudulently concealed from and/or intentionally failed to disclose to Plaintiffs and the Class that the Siding is defective, would prematurely fail, and that the damages were not the result of mishandling or installation errors.

158.    Defendants had exclusive knowledge of the defective nature of the Siding at the time of sale and at all other relevant times. The Defect is latent and not something that Plaintiff or Class Members, in the exercise of reasonable diligence, could have discovered independently prior to purchase.

159.    Defendants had the capacity to, and did, deceive Plaintiff and Class Members into believing that they were purchasing Siding or homes with Siding free from defects.

160.    Defendants undertook active and ongoing steps to conceal the Defect. Plaintiff is not aware of anything in Defendants' advertising, publicity, or marketing materials that disclosed the truth about the Defect, despite Defendants' awareness of the problem.

161.    The facts concealed and/or not disclosed by Defendants to Plaintiff and Class members are material facts in that a reasonable person would have considered them important in deciding whether to purchase (or to pay the same price for) the Siding or the homes containing the Siding from their builders.

162.    Defendants intentionally concealed and/or failed to disclose material factors for the purpose of inducing Plaintiff and the Class to act thereon.

163.    Plaintiff and the Class justifiably acted or relied upon the concealed and/or nondisclosed facts to their detriment, as evidenced by their purchase of the Siding and homes containing the Siding.

164.    Plaintiff and Class Members suffered a loss of money in an amount to be proven

at trial, *inter aila*, as a result of Defendants' fraudulent concealment and nondisclosure because: (a) they would not have purchased the Siding on the same terms if the true facts concerning the defective Siding had been known; (b) they would not have paid a price premium for the Siding if they knew of the Defect and that the Siding was likely to fail prematurely, warp, break, crack, etc.; and (c) the Siding did not perform as promised.

165.    By reason of the foregoing, Plaintiff and Class Members suffered, and continue to suffer damage and injury.

**COUNT VI**
**UNJUST ENRICHMENT**

166.    Plaintiff individually and on behalf of all others similarly situated, adopts and incorporates by reference all allegations contained in prior paragraphs as though fully set forth herein.

167.    Plaintiff and Class Members conferred a benefit of more than $1,000 each on Defendants when they selected and purchased the Siding.

168.    Defendants have been unjustly enriched in retaining the revenues derived from Class Members' purchases of the Siding, the retention of which under these circumstances is unjust and inequitable because Defendants' Siding is defective in manufacturing and/or design; is not fit for its ordinary and intended use; fails to perform in accordance with the advertisements, marketing materials, and other representations disseminated by Defendants; and otherwise failed to meet the reasonable expectations of ordinary consumers and caused Plaintiff and Class Members to lose money and suffer harm as a result thereof.

169.    Plaintiff and Class Members suffered a loss of money as a result of Defendants' unjust enrichment because: (a) they would not have purchased the Siding on the same terms if

the true facts concerning the defective Siding had been known; (b) they paid an unfair price premium due to the fact the Siding was represented as guaranteed as free from defects; and (c) the Siding did not perform as promised.

170.   As Defendants' retention of the non-gratuitous benefit conferred on them by Plaintiff and Class Members is unjust and inequitable, they must pay restitution to Plaintiff and Class Members for their unjust enrichment.

171.   Plaintiff and Class Members are entitled to restitution, disgorgement, and/or the imposition of a constructive trust upon, all profits, benefits, and other compensation obtained by Defendants from their deceptive, misleading, and unlawful conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, pray for a judgment against Defendants as follows:

a.   For an order certifying the Class, pursuant to Fed. R. Civ. P. Rule 23, appointing Plaintiff as representative of the Class, and appointing the law firms representing Plaintiff as counsel for the Class;

b.   For compensatory damages sustained by Plaintiff and the Class;

c.   For payment of costs of suit incurred;

d.   For both pre-judgment and post-judgment interest on any amounts awarded;

e.   For payment of reasonable attorneys' fees and expert fees as may be allowable under applicable law; and

f.   For such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff individually and on behalf of Class Members, hereby demand a trial by jury as to all issues so triable.

Dated: December 19, 2018

By: _/s/ Brittany A. Boswell_
Brittany A. Boswell
Kansas Reg. No. 27399
Mitchell Breit (*pro hac vice* forthcoming)
**SIMMONS HANLY CONROY**
112 Madison Avenue
New York, New York 10016-7416
Telephone:  (212) 784-6400
Facsimile:  (212) 213-5949
bboswell@simmonsfirm.com
mbreit@simmonsfirm.com

*Attorneys for Plaintiff and Proposed Class*